IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

LISA ARMSTRONG

        Plaintiff,

v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civ. No. 3:15-cv-02204-PK

**FINDINGS AND
RECOMMENDATION**

PAPAK, Magistrate Judge.

Plaintiff Lisa Armstrong ("Armstrong") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c), and reviews to determine that the Commissioner based her decision upon substantial evidence. *Id.*; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Commissioner's decision should be AFFIRMED for the reasons that follow.

///

## BACKGROUND

Born in 1975, Ms. Armstrong alleges disability beginning April 15, 2011, due to bipolar disorder, depression, anxiety, post-traumatic stress disorder, borderline personality disorder, intermittent explosive disorder, migraines, asthma, left shoulder bursitis and arthritis, sciatica, and lumbar spine issues. *Id.* at 194, 227. The Commissioner denied her initial applications, an ALJ held a hearing, and the ALJ found Ms. Armstrong not disabled on April 25, 2014. *Id.* at 16-30.

The Appeals Council accepted additional briefing into the record (*id.* at 4), but denied review. *Id.* at 1. This action finalized the Commissioner's decision. 20 C.F.R. § 404.981.

## DISABILITY ANALYSIS AND THE ALJ'S FINDINGS

The Commissioner reserves disability determinations for itself, 20 C.F.R. §§ 404.1537(d); 416.927(d), and follows a five-step regulatory inquiry in assessing disability claims under the Act. *Id.* at §§ 404.1520(a)(4); 416.920(a)(4); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A claimant bears the burden of persuasion at steps one to four; the Commissioner shoulders the burden of evidentiary production at step five. *Id.* at 1099; 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2).

The regulatory analysis determines if a claimant (1) is currently working; (2) has a medically determinable impairment presenting a barrier to work activity; or (3) meets or equals a regulatory disability definition based upon codified medical criteria. *Id.* at §§ 404.1520(a)(4)(i-iii); 416.920(a)(4)(i-iii). If the claimant is not working, has a qualifying impairment, and does not meet a listed disorder, the Commissioner assesses her residual functional capacity ("RFC"). *Id.* at §§ 404.1520(a)(4)(iv-v); 416.920(a)(4)(iv-v). The RFC is the most she can do despite limitations imposed by her impairment. *Id.* at §§ 404.1545; 416.945. The Commissioner

subsequently determines if the claimant may (4) perform her past work, or (5) perform work in the national economy. *Id.* at §§ 404.1520(a)(4)(iv-v); 416.920(a)(4)(iv-v). If the claimant can perform such work, she is not disabled under the Act. *Id.* at §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); *Tackett*, 180 F.3d at 1099. If not, the Act and regulations direct a finding of disability. 42 U.S.C. § 423(d); 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The ALJ found Ms. Armstrong's degenerative disc disease, obesity, asthma, anxiety disorder, affective disorder, and right shoulder impingement "severe" pursuant to 20 C.F.R. §§ 404.1524(c) and 416.924(c). Admin. R. 21. She found that these impairments did not meet or medically equal a regulatory listing. *Id.* at 22. The ALJ subsequently determined Ms. Armstrong retained a retained a residual functional capacity to perform light work, as defined by the regulations, with additional postural limitations. *Id.* at 23. Based upon this analysis, she found that Ms. Armstrong could not perform her past work, and but could perform work in the national economy. The ALJ concluded Ms. Armstrong was not disabled. *Id.* at 28-29.

## STANDARD OF REVIEW

This court must affirm the ALJ's decision if it is based on proper legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "Substantial evidence" means "more than a scintilla but less than preponderance." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014), quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1035 (9th Cir. 2007). It is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter*, 504 F.3d at 1035.

Variable interpretations of the evidence are insignificant if the Commissioner's is a rational reading of the record, and the reviewing court may not substitute its judgment for that of the Commissioner. *Id.* at 1010, quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Here, this court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), quoting *Robbins v. Soc. Sec. Admin.*, 446 F.3d 880, 882 (9th Cir. 2006); *see also Garrison*, 759 F.3d at 1009-10. It may not affirm the Commissioner on grounds upon which the Commissioner did not rely. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014), citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Brown-Hunter*, 806 F.3d at 1133, 1138.

## ANALYSIS

Ms. Armstrong challenges the ALJ's evaluation of her testimony and the opinion of a reviewing physician, and asks that the matter be remanded for further evaluation of this evidence.

### I. Testimonial Evidence

#### A. Standards

The Act allows consideration of a claimant's symptom testimony. Pain allegations must correspond to a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A). The regulations subsequently direct the Commissioner to consider a claimant's statements regarding his symptoms. 20 C.F.R. §§ 404.1529(a); 416.929(a). This analysis is individualized, but alleged pain and functional limitation must again relate to a medically-determinable impairment. *Id.* at §§ 404.1529; 416.929.

The Ninth Circuit consequently directs a two-step process in evaluating a claimant's pain and symptom testimony. First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. Here, the claimant

Page 4 – **FINDINGS & RECOMMENDATION**

need only show that the impairment "could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996), *reaff'd by Brown-Hunter*, 806 F.3d at 493. Second, absent evidence of malingering, the ALJ may conclusively reject a claimant's testimony to the severity of her symptoms only by offering "specific, clear and convincing reasons for doing so." *Brown Hunter*, 806 F.3d at 493, citing *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2015); *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008), citing *Lingenfelter*, 504 F.3d at 1036. Such findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Bunnell v. Sullivan*, 947 F.3d 341, 345-46 (9th Cir. 1991), *en banc*; *see also Brown-Hunter*, 806 F.3d at 493.

### B. Analysis

The ALJ found Ms. Armstrong's alleged symptom limitations "not fully credible," and cited, in support, the medical record pertaining to Ms. Armstrong's November 2013 lumbar spine surgery, and other factors including her global treatment records, use and disuse of pain and psychiatric medications, failure to attend medical appointments, and daily activities. Admin. R. 24-27.

Ms. Armstrong specifically challenges the ALJ's citation to clinical notes addressing her lumbar spine imaging and surgical reports. Pl.'s Op. Br., 9-10 (citing Admin. R. 27). She also infers that the ALJ improperly addressed her pain medication use, and discusses the ALJ's citation to her daily activities. *Id.* at 10. Ms. Armstrong finally challenges the ALJ's findings regarding her concentration limitations. *Id.* at 13.

///

///

### 1. Lumbar Spine Treatment Notes

The ALJ assessed treatment notes relating to Ms. Armstrong's back pain in considerable detail. *Id.* at 24-27. He noted her remote lumbar radiculopathy diagnosis, and a 2011 MRI showing "stable mild degenerative changes" with "no neural impingement identified." *Id.* at 24. The record shows that the full report found "L4-L5 annular tear with mild protrusion" and a "mild L5-S1 disc bulge." *Id.* at 485. The ALJ was therefore correct in finding that the MRI did not show neural impingement, but failed to note that it demonstrated pathology relating to back pain.

The ALJ also discussed Ms. Armstrong's June 2012 presentation in a wheelchair with complaints of increased back pain; examination showed equal tendon reflexes, decreased strength due to pain, and retained ability to kick and raise her knees to the ceiling. *Id.* at 25. Here the ALJ noted the attending physician's statement that it was "difficult to tell" if Ms. Armstrong was seeking pain medication, exhibited borderline personality traits, or if the exam and incontinence "are signs of cauda equina." *Id.* The record directly supports these findings. *Id.* at 370, 483.

The ALJ subsequently discussed Ms. Armstrong's November 2013 spinal surgery. *Id.* 27. This procedure attempted to resolve nerve irritation and pain caused by a bulging disc which compressed a nerve root at L4-L5. *Id.* at 561. The ALJ found that this anatomical abnormality did not appear in the record until November 2013, and that the earlier imaging studies showed "mild" degenerative disc disease only. *Id.* at 27. Because the August 2011 MRI report contains further diagnostic characterization, record does not fully support this finding.

The ALJ finally cited a January 2014 MRI, following surgery, which showed "minor degenerative changes . . . with degenerative narrowing of the disks, slight endplate spur, and facet hypertrophy causing mild foraminal narrowing (L3-4 and L4-5)." *Id.* at 544.

As noted, the Act directs that the ALJ must consider both the medical evidence and a claimant's statements, but that such statements "may reasonably be accepted as consistent with the medical signs and findings." 42 U.S.C. § 423(d)(5)(A) (2015) (originally enacted 1988)). Controlling authority clarifies that the ALJ may not discredit a claimant's allegations of pain simply because the medical record does not corroborate the degree of alleged pain. *Bunnell*, 947 F.3d at 344, 346m, *en banc* (citing § 423(d)(5)(A) legislative history, intra-circuit authority, and the Commissioner's policy promulgations); *see also Brown-Hunter*, 806 F.3d at 493.

The ALJ therefore erred to the extent she relied upon any inferential conclusion that Ms. Armstrong had no impairment related to back pain prior or subsequent to November 2013. The ALJ may, however, consider the medical record in addressing whether the impairment could "reasonably" cause the alleged pain, 42 U.S.C. § 423(d)(5)(A), and may cite it in conjunction with other factors. 20 C.F.R. §§ 404.1529(a); 416.929(a); *see also Bunnell*, 947 F.3d at 346. Here, the ALJ cited Ms. Armstrong's dramatic clinical presentation and concurrent clinical findings that no evidence of neural deformity arose and found that, consequently, the record did not support Ms. Armstrong's allegations of any symptom testimony related to neural impingement. Admin. R. 26. Further, Ms. Armstrong does not now point to testimony addressing neural impingement symptoms; she stated at her hearing that the 2013 surgical procedure "relieved" sciatic nerve pain. *Id.* at 59. Ms. Armstrong therefore fails to show that the ALJ erroneously omitted testimony on the matter.

///

Page 7 – **FINDINGS & RECOMMENDATION**

### 2. Marijuana and Opiate Medication Use

Contrary to Ms. Armstrong's inference, the ALJ did not directly cite her marijuana and narcotic pain medication in evaluating her pain testimony. The ALJ first discussed it in reference to her mental health records (Admin. R. 25) and subsequently pointed to a January 4, 2013 treatment note stating that Ms. Armstrong reported that she ceased using marijuana and "wants to try something else." Admin. R. 26 (citing *id.* at 497). The ALJ made no finding on the issue. The ALJ's citations are based upon the record, and Ms. Armstrong fails to show the ALJ erred.

### 3. Activities of Daily Living

The ALJ's evaluation of Ms. Armstrong's symptom testimony discussed her reported activities of daily living, citing Ms. Armstrong's reports that she plays board games, walks her dog, and cooks. *Id.* at 27. The ALJ noted that she sits on a stool while cooking to relieve discomfort, and requires a break after performing household chores for twenty minutes. *Id.* He characterized Ms. Armstrong's limitations as "mild." *Id.* at 22.

Ms. Armstrong does not directly challenge this finding, but states that she continued to experience back pain, despite these activities. Pl.'s Op. Br. 10. An ALJ's evaluation of a claimant's pain and symptom testimony may cite a claimant's activities of daily living. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *see also Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). This analysis may address whether the indicated activities contradict other testimony. *Orn*, 495 F.3d at 639. But, the reviewing court must be cautious in identifying such findings. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Ms. Armstrong testified that she experiences "a lot of pain through my whole entire body," Admin. R. 56, and is "not comfortable" when cooking. *Id.* at 57. She also stated that she

Page 8 – **FINDINGS & RECOMMENDATION**

is "hurting" after twenty minutes of activity. *Id.* at 58. She did not specify back pain, or explain additional limitations due to back pain. The ALJ's conclusion that she had "mild" restriction in her daily activities, and citation to the activities above, are consistent with this testimony. Ms. Armstrong therefore does not establish error.

### 4. Treatment Compliance

The Commissioner argues that the ALJ properly discredited Ms. Armstrong's symptom testimony because she failed to comply with prescribed treatment. Def.'s Br. 8. The ALJ noted that Ms. Armstrong did not attend recommended physical therapy, repeatedly missed mental health counseling appointments, and was not compliant in taking prescribed psychiatric medication. Admin. R. 25 (citing Ex. 9F, p. 12), 26, 27 (citing Ex. 10F).

A claimant must follow recommended treatment that would restore workplace ability, 20 C.F.R. §§ 404.1530(a); 416.930(a), and treatment history is a relevant factor in assessing symptom testimony. *Id.* at §§ 404.1529(c)(3)(v); 416.929(c)(3)(v). The ALJ may properly rely upon "unexplained or inadequately explained failure to seek treatment or to follow prescribed treatment." *Molina*, 674 F.3d at 1113, *quoting Tommasetti v. Astrue*, 553 F.3d 1035, 1039 (9th Cir. 2008). But, the ALJ may not rely upon a claimant's failure to seek treatment if he cannot afford it. *Orn*, 495 F.3d at 638, citing *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The Ninth Circuit further notes it is a "questionable practice" for an ALJ to chastise a mentally ill claimant for failing to seek treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), citing *Blakenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

The ALJ first found that Ms. Armstrong did not attend recommended physical therapy. Admin. R. 25, 26. Ms. Armstrong testified at her March 2014 hearing that she could not attend unspecified scheduled appointments due to an ice storm, a funeral, and stated she would be

beginning physical therapy the week following her hearing. *Id.* at 60. The record, however, supports the ALJ's finding that she did not attend more than three recommended physical therapy sessions in 2012 (*id.* at 501), and did not otherwise follow through with physical therapy referrals made in 2013. *Id.* at 598. The ALJ's finding should be sustained.

The ALJ also noted that Ms. Armstrong regularly failed to attend mental health therapy and medication management appointments between February and April 2013 (Admin. R. 503, 507-10, 513-14, 517), and "intermittently" attended mental health treatment in the year prior. *Id.* at 505. Because reviewing courts are directed to be especially cautious in affirming an ALJ's rejection of a claimant's testimony based upon failure to attend mental health treatment, *Ngueyn*, 100 F.3d at 1465, the ALJ's limited findings on that matter should not be sustained.

### 5. Concentration Limitations

Finally, Ms. Armstrong's argument pertaining to her testimony challenges the ALJ's findings addressing impaired concentration. Pl.'s Op. Br. 10. Ms. Armstrong stated that she gets "sidetracked," Admin. R. 56, but did not testify to further concentration limitations at her hearing or in other submissions to the record, Admin. R. 41-769; 226-240; 244-48, nor does she now point to any specific testimony proffered at the hearing or in response to the Commissioner's application materials.

Instead, she asserts that the ALJ improperly considered her mental health treatment notes, citing a document entitled "Treatment Plan (08/25/2011) I'll Know I'm Successful When(s)." *Id.* (citing Admin. R. 267, 270, 292). The document appears to relate a series of self-reported treatment goals selected from a drop-down menu template. The record is silent regarding the manner in which the document was formulated or used by providers; it is included within selected treatment notes recorded in a standardized template. The document states:

Page 10 – **FINDINGS & RECOMMENDATION**

|   |   |
|---|---|
| My Current Situation | Difficulty thinking, deciding, or concentrating |
| My Goal | To identify and adopt ways to improve my thinking and concentration skills that benefit me. |

*Id.* Entries are identical, but associated with respective office visits on September 26, 2011, November 2, 2011, and January 23, 2012. *Id.*

The associated visit notes show distress and mood disturbances, but do not show further concentration complaints or describe concentration limitations. *Id.* at 269, 291, 294. This evidence, taken at face value, does not show that Ms. Armstrong reported concentration impairment that is inconsistent with work activity. Ms. Armstrong therefore fails to establish error regarding her concentration symptom testimony. Remaining aspects of the medical record are addressed below.

### C. Conclusion

In summary, the ALJ's analysis of Ms. Armstrong's back pain symptom testimony adequately cited the overall medical record in conjunction with her activities of daily living and failure to follow through with recommended physical therapy treatment. Ms. Armstrong fails to identify specific testimony the ALJ rejected regarding her concentration limitations, and the ALJ's RFC included concentration limitations consistent with the scope of her testimony.

This court must affirm an ALJ's evaluation of testimony when it remains based upon substantial evidence despite error. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008), citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). The ALJ's aggregate citations to Ms. Armstrong's medical record, except as noted, activities of daily living, and failure to attend physical therapy constitute clear and convincing

reasons for finding Ms. Armstrong's testimony partially credible. The ALJ's conclusions regarding that testimony should therefore be sustained.

## II. Medical Opinion Evidence

Ms. Armstrong generally avers the ALJ improperly discredited mental health counseling notes addressing her concentration, and specifically argues the ALJ erroneously weighted an examining psychologist's opinion.

### A. Standards

The Commissioner relies upon medical evidence to make disability determinations; the regulations distinguish between treating, examining, and reviewing physicians. 20 C.F.R. §§ 404.1527(c) and (e); 416.927(c) and (e). The regulations reserve disability determinations to the Commissioner, and a physician's statement that an individual is unable to work does not direct a finding of disability. *Id.* at §§ 404.1527(d)(1); 416.927(d)(1). Further, the ALJ cannot "give any special significance" to the source of an opinion on this issue. *Id.* at §§ 404.1527(d)(2) and 416.927(d)(2).

Judicial review consequently distinguishes between treating, examining, and reviewing physicians. *See, e.g., Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion "must be given controlling weight if that opinion is well supported and not inconsistent with other substantial evidence in the case record." *Edlund v. Massinari*, 253 F.3d 1152, 1157 (9th Cir. 2001). The ALJ resolves "conflicting medical evidence" on the matter, but "must present clear and convincing reasons for rejecting the uncontroverted opinion of a claimant's physician." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002). An examining physician's opinion, in turn, receives greater weight than that of a reviewing physician, and the ALJ must set out "specific, legitimate" reasons for rejecting the opinion of an examining

Page 12 – **FINDINGS & RECOMMENDATION**

physician for that of a reviewing physician. *Nguyen*, 100 F.3d at 1466, citing *Lester*, 81 F.3d at 831.

### B. Lifeworks Counselling Notes

Ms. Armstrong asserts that the ALJ inaccurately characterized counselling notes pertaining to her concentration difficulties. Pl.'s Op. Br. 10. The ALJ stated, "in reports to Lifeworks, [Ms. Armstrong] notes more issues with her anger and irritability, and few findings of difficulty with concentration are noted in these records." Admin. R. 27.

As noted, LifeWorks clinical counselling notes for the periods between March 16, 2012 and April 30, 2013 show distress, but do not cite or discuss concentration difficulties beyond the questionnaire document discussed above. *Id.* at 378-430, 503-530. The ALJ's conclusion that the treatment notes did not show concentration difficulties is therefore supported by the record.

### C. Psychological Opinion Evidence

Ms. Armstrong asserts the ALJ incorrectly weighted an examining psychologist's opinion, and erroneously gave greater weight to a reviewing physician's opinion. Pl.'s Op. Br. 5-9. She infers that the ALJ erroneously omitted a second reviewing psychologist's opinion. *Id.* at 7.

#### 1. Examining Psychologist Tobias Ryan, Psy. D.

Psychologist Tobias Ryan, Psy. D., performed an evaluation for Disability Determination Services[1] on May 7, 2012. Admin. R. 340-43. He reviewed Ms. Armstrong's 2011 and 2012 mental health treatment records, and performed a clinical examination with neuropsychological testing. *Id.*

---

[1] Disability Determination Services ("DDS") a federally-funded state entity that makes initial disability determinations on behalf of the Commissioner pursuant to 42 U.S.C. § 421(a).

Page 13 – **FINDINGS & RECOMMENDATION**

Dr. Ryan stated that Ms. Armstrong's concentration "appeared to be impaired," but that her "memory abilities appeared to be only slightly impaired." *Id.* at 341. He found her general knowledge fund, abstract thinking, and social functioning limited. *Id.* at 341-42. Dr. Ryan assessed major depressive disorder, which he characterized as "most recent episode severe without psychotic features, in partial remission," and chronic post-traumatic stress disorder. *Id.* at 342. He concluded Ms. Armstrong's "prognosis is good" because "both her psychological disorders can be alleviated by consistent mental health treatment, and she can build upon strengths she has identified . . . ." *Id.* at 342-43.

Dr. Ryan subsequently opined Ms. Armstrong was unable to maintain employment at the date of his examination, but "if given consistent access to treatment may be able to resume at least part-time employment in 6-12 months." *Id.* at 343. Dr. Ryan concurrently found Ms. Armstrong's reasoning, understanding, memory, social interactions, and adaptation skills within normal limits, but stated that her "sustained concentration and persistence appeared to have been disturbed by her chronic mental health difficulties with motivation and mood regulation." *Id.*

The ALJ twice discussed Dr. Ryan's opinion. She first cited his clinical notes and findings. Admin. R. 25. She concluded:

> The consultative exam with Dr. Ryan shows that the claimant's stream of mental activity was within normal limits in rate and normality, memory abilities were only slightly impaired. She had a limited fund of knowledge, and insight and judgment were normal. The primary thing that appeared to be less than average was her sustained concentration and persistence. *Id.* at 27.

The ALJ subsequently accepted Dr. Ryan's opinion that Ms. Armstrong's ability to reason was within normal limits, but gave "some" weight to his opinion addressing her concentration, persistence and pace. *Id.* Here the ALJ relied upon Dr. Ryan's clinical testing in finding that

Ms. Armstrong could perform "simple" tasks. *Id.* at 28. The ALJ consequently found Ms. Armstrong's "sustained" concentration impaired, but found her "able to remember, understand and carry out simple tasks or instructions typical of occupations with an SVP of 1 or 2." *Id.* at 23-24.

"SVP" refers to "specific vocational preparation," or skill level, listed in the Dictionary of Occupational Titles. Soc. Sec. Ruling 00-4p, *available at* 2000 WL 1898704 at *3. SVP 1 or 2 refers to "unskilled work." *Id.* The Commissioner takes administrative notice of this information, *id.* at *2; 20 C.F.R. §§ 404.1566(d) and 416.966(d), and defines "unskilled work":

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . . [A] person can usually learn the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a) and 416.968(a).

Ms. Armstrong does not point to evidence showing that her alleged concentration impairment precludes such work. Any omission by the ALJ is therefore inconsequential to the conclusion that she could perform it. This court may not reverse an ALJ's determination on account of such harmless error. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), internal citations omitted; *see also Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The ALJ's conclusion on the matter is therefore sustained.

### 2. Reviewing Physicians Robert Henry, Ph.D., and John Robinson, Ph.D.

Finally, Ms. Armstrong asserts that the ALJ erroneously deferred to opinions promulgated by DDS reviewing physicians. Pl.'s Op. Br. 7.

DDS psychologist John Robinson, Ph.D., assessed Ms. Armstrong's "mental residual functional capacity" shortly after Dr. Ryan's examination, on June 4, 2012. *Id.* at 87-89. He

Page 15 -- **FINDINGS & RECOMMENDATION**

found moderate limitation in Ms. Armstrong's ability to remember detailed instructions, and found she could perform "SRT"[2] and maintain concentration in two-hour increments throughout an eight-hour workday. *Id.* at 87.

These limitations do not plainly contradict those assessed by Dr. Ryan. Dr. Ryan made no finding that Ms. Armstrong could not concentrate in less than two-hour increments. Any omission is therefore inconsequential to the ultimate determination of disability. As stated, such errors do not warrant reversal. *Carmickle*, 533 F.3d at 1163; *see also Stout*, 454 F.3d at 1055.

A second DDS psychologist, Robert Henry, Ph.D., performed another review on December 5, 2012. Admin. R. 111-13. Dr. Henry reviewed Ms. Armstrong's mental health treatment record, this time in conjunction with Dr. Ryan's report. *Id.* Dr. Henry's "mental residual functional capacity assessment" included limitations in Ms. Armstrong's understanding and memory. *Id.* at 111.

Dr. Henry concluded Ms. Armstrong was not significantly limited in remembering locations, work-like procedures, and very short and simple instructions, but found her moderately limited in remembering detailed instructions. *Id.* at 112. Dr. Henry found no significant limitations in Ms. Armstrong's ability to adhere to a schedule, sustain an ordinary routine without supervision, work with others, make simple work-related decisions, or complete and perform normal work schedules and activities without interruptions from psychological symptoms. *Id.* Dr. Henry characterized Dr. Ryan's opinion as a "snapshot," and found it based upon Ms. Armstrong's reports, "without substantial support from other evidence of record, which renders it less persuasive." *Id.* at 113.

---

[2] The record does not define this abbreviation.

Page 16 – **FINDINGS & RECOMMENDATION**

The ALJ must cite "specific, legitimate reasons" for according greater weight to a reviewing, rather than examining, physician's opinion. *Nguyen*, 100 F.3d at 1466. The ALJ's citation to the medical record here is sufficiently specific. Further, the ALJ did not here reject Dr. Ryan's opinion in favor of that of Drs. Robinson and Henry. Their opinions do not direct a less restrictive RFC regarding concentration than that assessed by Dr. Ryan. Any such omissions are inconsequential, and again do not amount to error. *Batson*, 359 F.3d at 1197. The Commissioner's findings pertaining to the medical evidence discussed above should therefore be affirmed.

## CONCLUSION

Except as noted, the ALJ's findings are based upon substantial evidence and correct legal standards. The indicated errors pertaining to Ms. Armstrong's testimony are inconsequential to the ultimate disability determination for the reasons explained. In such circumstances the reviewing court affirms the ALJ's decision. *Batson*, 359 F.3d at 1197, 1198. The ALJ's conclusion that Ms. Armstrong is not disabled under the Act should therefore be affirmed.

///

///

///

///

///

///

///

///

///

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections are due fourteen (14) days from service of the Findings and Recommendations. If no objections are filed, the matter will be taken under advisement on that date.

If objections are filed, a response is due fourteen days after service. The Findings and Recommendation will be taken under advisement when the response is due, or is filed, whichever date is earlier.

DATED this 31st day of October, 2016.

/s/ Paul Papak
PAUL PAPAK
United States Magistrate Judge